The Deputy Commissioner who wrote the Opinion and Award in this case is not the Deputy Commissioner who heard this case; therefore, Sanders does not apply.
My review of the evidence convinces me that the plaintiff is entitled to considerably more than the majority allows.
Plaintiff is a 49 year white male, who suffered a back injury on November 27, 1989 while working as a meat market manager for Food Lion in Winston-Salem. He was out of work due to the injury from November 28, 1989 to December 26, 1989 and from December 31, 1989 to January 31, 1990 during which time he received compensation for temporary total disability. His wage was $465.72 at Food Lion, which yields a compensation rate of $310.50. Plaintiff received further payments as compensation from Defendant for temporary total disability from April 26, 1990 until July 25, 1990. Plaintiff has not worked at any job since April 26, 1990, through no fault of his own.
Plaintiff was discharged by Food Lion on or about April 26, 1990, officially as a result of working off the clock At the hearing, Plaintiff testified that he was unable to do any work for which he was qualified due to back pain resulting from compensable injury. He further testified that he was pressured to return to work before he was able by threats of termination made by his supervisor, which threats where corroborated by testimony by his supervisor, Keith Bray. Plaintiff also testified that when he returned to work he took notes to his supervisors from his doctor restricting him to light duty when he returned to work, a situation which Mr. Bray confirmed; however, he was never offered any light duty and in fact was expected to conduct his work at his previous level. Mr. Bray also confirms that light duty was available, had been offered to another worker in a similar situation, but was not offered to Mr. Plaintiff. As a result of this in an attempt to do the work he was forced to cut corners (such as unintentionally working off the clock). Testimony offered by both parties concurred that Mr. Plaintiff's job duties included heavy lifting as well as supervision of other employees. Testimony by Mr. Bray also showed that Plaintiff had been able to do his job satisfactorily prior to the injury.
The Forms 21 dated January 2, 1990 and February 2, 1990, constituting an award of the Industrial Commission, both state that compensation for temporary total disability is to be paid Mr. Plaintiff "at the rate of $310.50 per week for necessary weeks".
Plaintiff testified that he had not worked since April 26, 1990 due to his back injury. He testified that since the back injury he has suffered and does suffer from severe lower back pain which makes it impossible for him to lift any weight, or to stay in one position for very long without having to lie down and rest his back. He further testified that he had sought work with the postal service, but that all offers he had received from the postal service required lifting and he could not accept them. Plaintiff further testified that he had always held jobs requiring manual labor and/or driving of one sort or another and that was all he was qualified to do by education and training.
Uncontested testimony by Plaintiff, by his mother, and by his brother showed that prior to the back injury Plaintiff had a very strong work ethic and lived a very active life including active participation in maintenance of the family property, chopping wood, and hunting. The testimony further showed that since the back injury he has been unable to do any of this.
The medical evidence submitted also fully supports Plaintiff's case. Dr. Dye's progress notes indicate that Plaintiff initially appeared to be making improvement prior to his attempt to return to work in January 1990; however, a weight lifter's belt and a TENS unit were prescribed for back support and to decrease pain. (Plaintiff testified that he did use these when trying to go back to work.) Dr. Dye's progress notes for January 25, 1990 mention back pain as well as the need for further physical therapy. Dr. Dye's progress notes for February 20, 1990 report that aching pain continues in Plaintiff's back and that Plaintiff was taking Motrin, Vicodin, and Darvocet at various times for pain. At this point he had been back at work for three weeks. On April 26, 1990 Plaintiff had a return visit to Dr. Dye, at which time he complained of increasing symptoms. From then on through July 24, 1990, Dr. Dye's reports show continuing problems with his back, which physical therapy did not help but only made worse. These notes also confirm Plaintiff's description of his symptoms. By May of 1990 Plaintiff was removed from physical therapy as it was doing no good. On or about July 26, 1990, Dr. Dye determined that Plaintiff's symptoms were not going to improve by his ministrations, released him from his care and restricted Plaintiff from any heavy lifting. (An essential qualification for Plaintiff's former job as a meat market manager). Dr Dye does suggest that the pain symptoms were partially the result of stress. The constant pain and inability to do his job, being forced to attempt work when he was not ready (indeed, he had to take pain medication and wear a support belt) and being discharged by his employer, were certainly sources of stress in his life. However, this stress is directly related to his compensable injury.
In June 1990, Dr. Randy O. Kritzer, a neurosurgeon in Greensboro, examined Plaintiff and fully agreed with Dr. Dye's treatment, except that he did not feel Plaintiff was ready for work and recommended bed rest. Neither he nor Dr. Dye suggested that Plaintiff was in any way exaggerating his systems or suggested any underlying psychological problem as the source of the pain.
In his 1990 evaluation Dr. Robert Pruner concluded that he was "very pessimistic about this patient ever returning to the work force in any type of activity" and that "this patient has fallen into a chronic pain category".
This analysis was further confirmed by Stephen I. Kramer, M.D. in his 1995 psychiatric evaluation written report. He diagnosed pain disorder associated with both psychological and a general medical condition (chronic lumbosacral and cervical strain) and said the clinical expression of this disturbance far outweighs the objective findings, and does appear related to his injury at Food Lion in November 1989.
Plaintiff is unable to perform his past relevant work as a meat cutter and meat market manager. Plaintiff's subjective complaints regarding his symptoms are credible and are supported by the objective medical evidence.
Plaintiff did not attempt to go back to work with Food Lion because his back pain was cured or gone, he went back to work because he felt pressured to return to work by his supervisor and feared he would lose his job if he did not. Even after returning to work he consistently complained of back pain to Dr. Dye.
Prior to his injury in November 1989, Plaintiff had never been out of work due to back pain and had never had any significant back problems. The medical records submitted confirm this.
Plaintiff did have a history of emotional problems relating back to his tour of duty in Viet Nam with the Marines. These problems resulted in three failed marriages, and include Post-Traumatic Stress Syndrome related to his military service (The PTSD was not, however, diagnosed until after the back injury). Despite these problems, Plaintiff was able to work and hold down a job successfully, as his generally excellent work record at Food Lion (including several raises and promotions) shows.
Since his back injury while working with Food Lion, he has not been able to hold down a job, his PTSD became worse, and he developed chronic back pain which prevents him from doing any work for which he is qualified.
The Evidence does not justify a finding that Plaintiff was able to work full duty prior to his discharge on April 26, 1990. Plaintiff's own testimony supported by that of Mr. Bray is that he received notes stating that he was to work light duty. Plaintiff himself testified concerning the difficulties he had with his back pain between the beginning of February and late April, 1990. Dr. Dye in his progress notes as of February 20, 1990 reported that Plaintiff continued to report back pain, was taking pain killers and using his back brace. Dr. Dye's progress notes as of April 26, 1990 report that Plaintiff was again in much pain and that he was unable to work. Dr. Dye prescribed a month's rest for him. Plaintiff further testified that he was slowed down by the back pain and could not do his work in a timely manner. Finally, Defendant continued to pay Plaintiff compensation for temporary total disability until July 25, 1990 as stipulated by the parties and as shown by the Forms 26 and 28B, which the Deputy Commissioner refused in admit in evidence.
Mr. Bray's testimony that he did not observe Plaintiff to have trouble in performing his work must be discounted since he only saw Plaintiff at work on an occasional basis.
The evidence likewise does not support a finding that Mr. Plaintiff's discharge had nothing to do with back injury. Plaintiff's testimony that he could not do his work in a timely manner and felt pressured to perform at a level he could not perform at shows that his unintentional working off the clock resulted from the stress of having to perform beyond his then physical capabilities without any support from his employer. Dr. Dye's progress notes show that he determined on that date that Plaintiff was in such pain that he could not work. Dr. Dye then prescribed no work for a month.
The Deputy Commissioner and the majority of the Full Commission panel on appeal erred in finding that Plaintiff did not make reasonable efforts to obtain employment. The Plaintiff's inability to earn wages following April 26, 1990 was clearly due to his compensable injury. The Plaintiff's inability to earn wages following April 26, 1990 was clearly due to his injury. All of the lay evidence and testimony uniformly confirms that prior to his back injury in November 1989 Plaintiff was never discharged by an employer and did very satisfactory work with Food Lion. The testimony by Plaintiff and by other witnesses showed that his ability to do even the most common chores in life changed dramatically after his work related back injury. Plaintiff made reasonable efforts to find work considering his condition and abilities. Plaintiff is now a 49 year old male with a basic high school education who has only held jobs requiring manual labor. Generally these jobs have required fairly heavy manual labor. Every job he has been able to obtain an offer for since he left Food Lion has either required heavy lifting or the offer has been withdrawn as soon as he has mentioned his back problems.
For a man of Plaintiff's background and experience, there will not be any jobs in which he can stand a while (an hour perhaps), then lie down for a long while, sit a while (an hour perhaps), then lie down for a long while, and so forth. Certainly no such jobs would be earning him wages comparable to those he was earning with Food Lion. The greater weight of the evidence shows by far that Plaintiff has made reasonable efforts to find work he could do, but simply could not find work that he was capable of doing. The greater weight of the evidence also shows that Plaintiff is permanently disabled and that the back pain is a significant contributor to that.
Food Lion has the burden of proving that Plaintiff is no longer disabled as a result of his injury at Food Lion. It is long and well established that once a disability has been determined it is presumed to continue until the plaintiff returns to work. As long ago as Tucker v. Lowdermilk, 233 N.C. 185, 63 S.E.2d 109 (1951) the Supreme Court held that an award of the Industrial Commission made during disability is presumed to continue until the Plaintiff returns to work. This rule is also echoed in the Industrial Commission's Rule 404, which requires that an Application to Stop Payment of Compensation (Form 24) be filed with the Commission and be served on the Employee when the Employer desires to stop payment of compensation. No Form 24 appears in the Industrial Commission records in this case.
The Alexis check stubs, Plaintiff's uncontested testimony, and the Forms 26 and 28B received by Plaintiff show that he continued to receive compensation from Food Lion until July 24, 1990. Dr. Dye's notes for July 26, 1990 do not indicate that Plaintiff was released from his care because he was no longer disabled, nor do they indicate that Plaintiff would be able to return to work as a meat market manager. Quite the contrary, they show that Plaintiff remained in pain and would be unable do any heavy lifting (an essential part of his former job). Therefore the burden remained on Food Lion to prove that Plaintiff is no longer disabled (a burden Food Lion did not meet) and the majority erred in requiring Plaintiff to prove that he is still disabled as a result of his work related injury.
The Deputy Commissioner refused to admit testimony by Plaintiff concerning successful class action litigation against Food Lion by workers pressured to work off the clock on the grounds that the matter was not relevant. Since Plaintiff was officially discharged by Defendant for working off the clock, this testimony was entirely relevant to Defendant's policies and the way it treated its employees. The subject was further opened up by Defendant's employee Keith Bray when he testified that because of legal problems they were very strict with employees caught working off the clock. The fact that a truck full of perishable foods which needed unloading would arrive just as all other meat department employees have left and Plaintiff has checked out, and the fact that Plaintiff's supervisor who is not based on site and does not visit the store on any regular schedule arrives just at the wrong time, is too much of a coincidence.
My vote is to pay Plaintiff the continuing temporary total disability compensation to which he is entitled, until such time as Food Lion places him in a suitable job.
This the 2nd day of April, 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER